UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

VENUS S. E.,[1]

      Plaintiff,

  v.

                                     24-CV-6402-MAV
                                     **DECISION AND ORDER**

COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

_____

## INTRODUCTION

Venus S. E. ("Plaintiff") brought this action pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of the United States Social Security Administration ("Commissioner"), denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). *See* ECF No. 1. The parties filed cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. ECF Nos. 8, 11. For the reasons set forth below, the Court grants Plaintiff's motion, ECF No. 8, and denies the Commissioner's cross-motion, ECF No. 11.

## PROCEDURAL HISTORY

The Court assumes the reader's familiarity with the facts and procedural history in this case and therefore addresses only those facts and issues which bear directly on the resolution of the motions presently before the Court.

---

[1] The Court's Standing Order issued on November 18, 2020, directs that "in opinions filed pursuant to ...42 U.S.C. § 405(g), in the United States District Court for the Western District of New York, any non-governmental party will be identified and referenced solely by first name and last initial."

## I. Plaintiff's Application

On March 2, 2021, Plaintiff filed applications for DIB and SSI, alleging a disability onset date of September 15, 2019, due to a mood disorder, anxiety, post-traumatic stress disorder ("PTSD"), bipolar disorder, depression, thyroid problems, heart problems, and an unspecified blood clotting issue. Administrative Record ("AR") at 77–78, 95–99.[2] She was last insured for disability insurance benefits on June 30, 2024. *Id.* at 12. Her claims were initially denied by the Social Security Administration ("SSA") in June 2021 and on reconsideration in February 2022. *Id.* at 155, 175. Thereafter, Plaintiff timely requested a hearing. *Id.* at 204.

## II. Plaintiff's Hearing Before the ALJ

On December 12, 2022, an Administrative Law Judge ("ALJ") held a hearing during which Plaintiff testified telephonically. *Id.* at 40–46. Plaintiff was represented by an attorney. *Id.* at 42–43. The ALJ adjourned the hearing for further development of the record and to secure a medical expert to testify. *Id.* at 44–46. The second hearing was held on March 13, 2023, at which Plaintiff again appeared telephonically and was represented by an attorney. *Id.* at 47–50. A vocational expert ("VE") and a medical expert testified. *See id.* at 48.

Plaintiff testified that she was 47 years old,[3] had completed high school and approximately two years of college, and lives alone with some support from her sister and mother. *Id.* at 55–58. Plaintiff testified that she is not attending college because

---

[2] When referencing the page number(s) of citations to the administrative record in this Decision and Order, the Court cites to the SSA citations located at the bottom right of the papers.

[3] 44 years old as of the date last insured. AR at 25 (citing 20 C.F.R. §§ 404.1563, 416.963).

of her difficulty being around crowds and strangers, *id.* at 55–56, and that even with family, she cannot tolerate being amongst a group of more than two or three people, *id.* at 62. Plaintiff's past relevant work predated a traumatic event that has meaningfully impacted her limitations on her ability to work. *See id.* at 55–64. She testified that she has particular difficulty being around any men, which manifested in, *inter alia,* a counterproductive nature and disruptions to her medical treatment—being unable for a time to find female providers. *See id.* at 58–64

The testifying medical expert was a board-certified doctor in cardiology and internal medicine with no history of examining or treating Plaintiff. *Id.* at 51. The "main issue" discussed by the medical expert was Plaintiff's history of blood clots in her lower extremities. *Id.* at 52–53. He concluded that her clotting condition did not meet or equal any SSA "Listing,"[4] and found that associated limitations would "primarily" be standing for two hours only, and also that Plaintiff would likely be limited by precluding use of ladders, scaffoldings or ropes, and to only occasionally crawling. *Id.* at 52–54.

The VE opined that a hypothetical claimant with a residual functional capacity[5] ("RFC") identical to that which the ALJ ultimately determined Plaintiff to have would not be able to perform Plaintiff's past relevant work, but would be able to perform various jobs that existed in significant numbers in the national economy such as merchandise marker, routing clerk, and mailroom clerk. *Id.* at 24–26, 72–75.

---

[4] *See infra* at 5.

[5] "Residual functional capacity" ("RFC") means the most that the claimant can still do in a work setting despite the limitations caused by the claimant's impairments. 20 C.F.R. § 404.1545.

## III. The ALJ's Decision

On October 4, 2023, the ALJ issued a decision finding that Plaintiff was not disabled and therefore did not qualify for DIB or SSI. AR at 26.

At the outset, the ALJ found that Plaintiff met the insured status requirements for DIB[6] through June 30, 2024, and had not engaged in substantial gainful activity since her amended alleged onset date of September 15, 2019. *Id.* at 12. Then, at step two of the Commissioner's "five-step, sequential evaluation process,"[7] the ALJ determined that Plaintiff had the following severe impairments: May Thurner syndrome, anxiety disorder, and depressive disorder.[8] *Id.*

---

[6] Claimants must meet the insured status requirements of the Social Security Act to be eligible for DIB. *See* 42 U.S.C. § 423(c); 20 C.F.R. § 404.130.

[7] In addition to the insured status requirements for DIB benefits, the Social Security Administration has outlined a "five-step, sequential evaluation process" that an ALJ must follow to determine whether a claimant has a "disability" under the law:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014); citing, *inter alia*, 20 C.F.R. § 404.1520(a)(4)(i)–(v), § 416.920(a)(4)(i)–(v)). The claimant bears the burden of proof for the first four steps of the process. 42 U.S.C. § 423(d)(5)(A); *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999). At step five, the burden shifts to the Commissioner to demonstrate that there is other work in the national economy that the claimant can perform. *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009).

[8] In making this finding, there is no discussion in the ALJ's decision of the "paragraph B" criteria, despite its purpose being to determine whether a mental impairment(s) is severe or non-severe. 20 C.F.R. § 404.1520a(d)(1); *see* AR at 12–14. The ALJ does discuss paragraph B criteria in assessing step three—meeting or equaling a Listing under 20 C.F.R. Part 404, Subpart P, Appendix 1—and, curiously, finds the "paragraph B' criteria are <u>not</u> satisfied." AR at. 14–16. These deficiencies are not challenged on appeal, but the Court flags them for remand.

When a claimant alleges mental impairments in support of their claim of disability, the ALJ must supplement steps two and three of the standard five-step analysis with what is known as the "special technique." *See* 20 C.F.R. § 404.1520a; *see Nedzad O. v. Comm'r of Soc. Sec.*, 577 F. Supp. 3d 37, 44 (N.D.N.Y. 2021). This technique requires the ALJ to determine first whether the claimant has

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). *Id.* at 14–16. Then, before proceeding to step four, the ALJ determined that Plaintiff had the following residual functional capacity[9] ("RFC"):

> to perform light work as defined in 20 [C.F.R. §§] 404.1567(b) and 416.967(b) except the claimant can stand or walk for up to six hours in a workday. The claimant can sit for up to six hours in a workday. The claimant cannot climb ladders, scaffolding, or ropes. The claimant can occasionally crawl. The claimant can understand, remember, and carryout simple tasks. The claimant can sustain concentration, persistence, and pace during the typical two-hour periods for eight-hour workdays for forty hour[s] per week. The claimant can work collaboratively with co-workers, accept supervision, and tolerate occasional interaction with the general public.

*Id.* at 16. At step four, the ALJ found that Plaintiff was unable to perform her past relevant work. *Id.* at 24–25. Nevertheless at step five, the ALJ found that based on Plaintiff's age, education, work experience, and RFC, as well as the testimony of the VE, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as a merchandise marker, routing clerk, and mailroom

---

a "medically determinable mental impairment." *Nedzad O.*, 577 F. Supp. 3d at 44. If the claimant is found to have such an impairment, the ALJ must rate the degree of functional limitation resulting from the impairment(s) across four broad functional areas, known as "Paragraph B criteria": (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting and managing oneself. *See* 20 C.F.R. § 404.1520a(c)(3); 20 C.F.R. Part 404, Subpart B, Appendix 1 §§ 12.00(E)(1)–(4); *see also Nedzad O.*, 577 F. Supp. 3d at 44. Based on the record, the ALJ must make a finding as to the degree of any limitations in each functional area, using assessments of "none," "mild," "moderate," "marked," and "extreme," *see* 20 C.F.R. § 404.1520a(c)(4), which in turn informs whether the ALJ deems the mental impairment "severe" or "non-severe," *see id.* § 404.1520a(d)(1). If the ALJ rates the claimant's degree of limitation as "none" or "mild," the ALJ "will generally conclude that [claimant's] impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [claimant's] ability to do basic work activities." 20 C.F.R. § 404.1520a(d)(2).

[9] "Residual functional capacity" ("RFC") means the most that the claimant can still do in a work setting despite the limitations caused by the claimant's impairments. 20 C.F.R. § 404.1545.

clerk. *Id.* at 25–26. Therefore, the ALJ found that Plaintiff was not disabled, and not entitled to DIB or SSI. *Id.* at 26.

On May 2, 2024, the Appeals Council denied Plaintiff's request to review the ALJ's decision. *Id.* at 1–6. The ALJ's decision thus became the "final decision" of the Commissioner. *See Perez v. Chater*, 77 F.3d 41, 44 (2d Cir. 1996) (citing 20 C.F.R. § 404.981) ("[I]f the Appeals Council denies review, the ALJ's decision becomes the [Commissioner]'s final decision."). This appeal followed. 42 U.S.C. §§ 405(g); 1383(c)(3).

## LEGAL STANDARD

Congress has authorized federal courts to engage in limited review of final Social Security benefits decisions. *See* 42 U.S.C. § 405(g). The Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards. *See id.*; *Rucker v. Kijakazi*, 48 F.4th 86, 90–91 (2d Cir. 2022).

"'Failure to apply the correct legal standard constitutes reversible error, including in certain circumstances, failure to adhere to the applicable regulations.'" *Douglass v. Astrue*, 496 F. App'x 154, 156 (2d Cir. 2012) (quoting *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (remanding for non-compliance with regulations)). Federal courts review *de novo* whether the correct legal principles were applied and whether the legal conclusions made by the ALJ were based on those principles. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).

If the reviewing court is satisfied that the ALJ applied the correct legal standards, then it must "conduct a plenary review of the administrative record to

determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision." *Schillo v. Kijakazi*, 31 F.4th 64, 74 (2d Cir. 2022) (noting it is not a federal court's function to determine *de novo* whether a plaintiff is disabled). "The substantial evidence standard means once an ALJ finds facts, [the Court] can reject those facts only if a reasonable factfinder would have to conclude otherwise." *Id.* (quotations and emphasis omitted); *see Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (reiterating "substantial evidence" is "more than a mere scintilla" and not a high evidentiary burden to satisfy). In other words, "[i]f evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *Schillo*, 31 F.4th at 74 (quotation omitted). The Court "require[s] that the crucial factors in any determination be set forth with sufficient specificity to enable [it] to decide whether the determination is supported by substantial evidence." *Id.* (quotation omitted).

## DISCUSSION

On appeal, Plaintiff argues that the ALJ erred by failing to account for Plaintiff's consistently recognized moderate limitations in dealing with co-workers and supervisors in her RFC while, inexplicably, crediting the same medical sources' conclusion that she had moderate limitations in interacting with the general public. ECF No. 8-1 at 8–13; *see id.* at 13–16. The Commissioner responds, *inter alia*, that any error was harmless because unskilled work, as provided for by the RFC, already accounts for Plaintiff's difficulty dealing with others. *See* ECF No. at 5–12. The Court agrees with Plaintiff.

Here, all three psychologists—Dr. Ransom, Dr. Weitzen, and Dr. Dantoni—opined that Plaintiff would have moderate difficulty interacting with supervisors, co-workers, and the general public. AR at 89–90, 130–31, 693. Nevertheless, without discussing the consistency amongst these medical opinions, or if and how he reconciled opined limitations as to the general public with opined limitations as to co-workers and supervisors, the ALJ found that it was appropriate for Plaintiff's RFC to include that "[t]he claimant can work collaboratively with co-workers, accept supervision, and tolerate occasional interaction with the general public." *Id.* at 16.

In rendering the instant RFC, the ALJ restricted Plaintiff's interactions with the public but placed no restrictions on her interactions with supervisors or co-workers. *Annamarie A. v. Comm'r of Soc. Sec.*, No. 1:20-CV-1326-MJR, 2022 WL 2712539, at *8 (W.D.N.Y. July 13, 2022). "The public, supervisors, and co-workers are distinct groups, and are separately addressed on the [Commissioner's] mental residual capacity forms." *Michelle A. v. Saul*, No. 19-CV-00991-MJR, 2020 WL 7223235, at *5 (W.D.N.Y. Dec. 8, 2020) (alteration in original). To the extent an ALJ distinguishes between the groups with whom a claimant can interact, he must explain and provide support for that distinction. *Annamarie A.*, 2022 WL 2712539, at *8 (citing *Luke H. v. Saul*, 19-CV-720, 2020 WL 4346789, at *4 (N.D.N.Y. July 28, 2020) ("Plaintiff objects that the ALJ erred by failing to explain why she treated Plaintiff's ability to interact with co-workers and supervisors differently than the general public. While a distinction of this sort, when properly explained, may well be appropriate based on the evidence in the record, no such explanation was provided here." (citations omitted))).

8

The ALJ failed to provide such support or explanation here. In fact, nowhere in the opinion did the ALJ specifically discuss or analyze Plaintiff's ability to interact with supervisors or co-workers, nor did he explain why he treated Plaintiff's ability to interact with the general public different than with supervisors and co-workers. *Id.* These errors are especially significant here, because the ALJ accepted Dr. Ransom's, Dr. Weitzen's, and Dr. Dantoni's opinions that Plaintiff was moderately limited in dealing with others, and these medical sources did not differentiate between the public, supervisors, or co-workers. *See id.* (noting an "especially significant error" where only one medical source identified moderate limitations in dealing with "others" without discriminating between supervisors, co-workers, and the general public); *see Michelle A. v. Saul*, 19-CV-00991, 2020 WL 7223235, at *5 (W.D.N.Y. Dec. 8, 2020) ("The ALJ's failure to then either impose a limitation as to plaintiff's ability to interact with supervisors, or to explain, based upon the evidence in the record, why one was not necessary, is an error which requires remand."); *Rivera v. Berryhill*, 18-CV-122, 2019 WL 3497810, at *3 (WDNY Aug. 1, 2019) (remand required where the hypothetical posed to the vocational expert imposed no limitations on plaintiff's ability to interact with co-workers or supervisors even though the ALJ determined that plaintiff had moderate limitations in interacting with others and accepted the consultative examiner's opinion that plaintiff was moderately limited in his ability to relate adequately with others and socialize); *Joseph H. v. Comm'r of Soc. Sec.*, 3:19-CV-587, 2020 WL 2736276, at *8 (N.D.N.Y. May 26, 2020) (". . . the ALJ compounded her error by failing to explain how she determined that plaintiff could tolerably interact with co-workers and supervisors up to one-third of the workday but

9

not the general public, when the medical opinion evidence in the record made no such distinction regarding plaintiff's limitations in interacting with others."). *Cf. Benjamin C. v. Comm'r of Soc. Sec.*, 5:21-CV-872 (ATB), 2022 WL 16571699, at *9 (N.D.N.Y Nov. 1, 2022) (finding that moderate limitations in social interactions assessed by the medical consultant was adequately accommodated by an RFC that called for only occasional, brief, and superficial interactions with the public and co-workers, occasional interaction with supervisors, and no work involving direct customer service). Nor did the ALJ reconcile Plaintiff's subjective testimony regarding her limitations as to being around men and being unable to tolerate groups larger than two or three people—whether stranger or familiar. Such limitations would apply to supervisors and co-workers as they would to the general public. Remand is warranted.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings, ECF No. 8, is GRANTED, and the Commissioner's cross-motion for judgment on the pleadings, ECF No. 11, is DENIED. The matter is REMANDED under sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated: March 31, 2026
      Rochester, New York

HON. MEREDITH A. VACCA
UNITED STATES DISTRICT JUDGE

10